OPINION
Defendant-appellant, Derek Woods, appeals his conviction in the Cuyahoga County Court of Common Pleas of assaulting a peace officer, possession of cocaine and possession of criminal tools.
The record reflects that on April 27, 1998, the Cuyahoga County Grand Jury returned a six-count indictment against appellant. Counts one through four charged appellant with assaulting a peace officer, in violation of R.C. 2903.13. Each count identified a different deputy sheriff as a victim of appellant's alleged assault. Count five of the indictment charged appellant with possession of more than five but less than ten grams of crack cocaine, in violation of R.C. 2925.11 (C) (4) (c), and count six charged appellant with possession of criminal tools, in violation of R.C. 2923.24 (A) (3).
The matter proceeded to a jury trial on June 3, 1998. At the onset of trial, the state made a motion in limine to preclude defense counsel from commenting upon the fact that between the date of the alleged assault and trial, Demetrius Forte, the alleged victim in count one, had been charged and convicted in federal court in connection with a large-scale sting operation conducted by the Federal Bureau of Investigation. The state also moved to quash a defense subpoena requesting information from Forte's personnel file. The prosecutor argued that any information in Forte's personnel file was irrelevant because "the State of Ohio does not intend to call Deputy Forte as a witness."
The trial court granted both motions, ruling that if the state called Forte as a witness, then all proper cross-examination would be allowed; but because the state had announced that Forte would not testify, no impeachment evidence would be permitted. The trial court informed defense counsel that he could subpoena Forte and the prosecutor told defense counsel that if he prepared a subpoena, he (the prosecutor) or the sheriff's department would have it served.
The state presented the testimony of three Cuyahoga County Deputy Sheriffs at trial: Sergeant Marcus Prewitt, Deputy Brian Hurd and Deputy Jerome Wilcoxson. Sergeant Prewitt testified that he is the officer in charge of the sheriff's patrol unit, which serves arrest warrants. On January 10, 1998, his unit received an anonymous tip that appellant, who had a warrant out for his arrest, would be at a residence on Guardian Avenue in Cleveland, Ohio. At approximately 5:00 p.m. that day, Prewitt drove to the address in a zone car, accompanied by Deputies Brian Hurd and Demetrius Forte. Deputies Wilcoxson and Smith followed in a second car.
Prewitt testified that as the deputies proceeded down Guardian Avenue, they observed appellant in a vehicle that was backing down a driveway. As Prewitt pulled his car behind the vehicle in order to block the driveway, appellant got out of the vehicle and started running down the street. Deputies Hurd and Forte began running after appellant.
Deputy Wilcoxson testified that he backed his car up to try to block appellant's escape, but when he got out of his car and stepped in front of appellant, appellant changed direction and began running south through the yards of the houses on Guardian Avenue. Wilcoxson got back in his car and began to tour the area to look for appellant. Sergeant Prewitt ordered Deputy Smith to remain with the occupants of the blocked car and then similarly drove his car around the area to look for appellant.
Deputy Brian Hurd testified that he and Deputy Forte chased appellant down Guardian Avenue approximately four or five houses and then appellant began running south through yards and jumping fences. According to Hurd, as they ran through the back yard of a house two blocks south of Guardian Avenue, Forte grabbed for appellant, but appellant shook him off. Hurd, who was running shortly behind Forte, then tackled appellant. According to Hurd, appellant was "throwing elbows and trying to kick" him in his legs to shake him off, and elbowed him in his shoulder area as they fell to the ground. Hurd testified that appellant continued struggling and kicking as the officers held him down. Hurd told appellant three times to stop resisting and to put his hands behind his back or he would be "pepper-foamed."
As he was driving his car down the street, Sergeant Prewitt observed Deputies Hurd and Forte struggling with appellant and got out of his car to assist the deputies. Prewitt testified that when he ran up, he observed appellant, who was on the ground on his stomach with one hand under his body, kicking and punching Deputies Hurd and Forte, who were trying to handcuff him.
Deputy Wilcoxson, who ran up with Prewitt, testified that when he ran up the driveway, he saw Deputy Forte trying to grab appellant. Wilcoxson saw appellant elbow Forte and shake him off. Wilcoxson testified that as appellant, Hurd and Forte fell to the ground, he saw appellant "kicking and kneeing" Deputy Hurd. Wilcoxson ran up and tried to grab appellant's legs but appellant kicked him "a couple of times." Wilcoxson testified that he could get only one of appellant's legs secured at first, and saw appellant kick Prewitt with his other leg. Wilcoxson then straddled appellant's legs and sat on them to keep him from kicking.
According to Wilcoxson, as he straddled appellant's legs, he grabbed one of appellant's arms and held it behind his back. The deputies then tried to get appellant's other arm, which was under his body, behind his back, but appellant kept struggling.
Prewitt, who was standing back a little from the struggle, testified that he ordered appellant three times to stop resisting. When appellant continued to struggle, Prewitt "pepper-foamed" him. When appellant still continued to struggle, Prewitt "pepper-foamed" him again.
Prewitt testified that appellant punched at him but never delivered an actual blow because he stood back and was able to avoid the punches. On cross-examination, Prewitt admitted that he did not see where appellant struck Wilcoxson and did not see appellant strike Deputy Forte, but testified that Deputies Hurd, Forte and Wilcoxson all had muddy footprints on their uniforms.
After Prewitt sprayed pepper foam in appellant's face a second time, appellant stopped struggling, was handcuffed and led to one of the patrol cars, where he was frisked. He was taken to the county jail, where his face and eyes were flushed with water and toweled off. From there he was taken to the booking area and property desk, where Wilcoxson found $270, a pager and 9.19 grams of crack cocaine on appellant's person.[1]
Deputy Hurd testified that it was muddy and rainy on January 10, 1998 and that his shoes became wet and muddy as he chased appellant. Deputy Wilcoxson testified that at the jail after appellant's arrest, he, Hurd and Forte compared the mud prints from appellant's shoes on their uniforms to see where they had been kicked. Because the deputies had just started their shift when they arrested appellant, Sergeant Prewitt sent them home to change their clothes.
After the trial court denied appellant's Crim.R. 29 motion for acquittal, appellant presented the testimony of Susan Woods, appellant's mother, Marguerite Johnson, appellant's grandmother, and Richard Johnson, appellant's uncle. None of these witnesses were at the scene of appellant's arrest.
Mrs. Woods testified that she was backing her car out of the driveway of her mother's house when the deputies blocked her exit with their cars. When appellant ran from her car, she yelled "Don't run." The remainder of Woods' testimony, and that of her mother and brother, concerned events that occurred in the driveway after appellant had fled the scene. The witnesses complained that Deputy Smith, who had remained behind while the other deputies chased appellant, was rude and abusive to them, including pointing his gun at them and addressing them with obscene epithets.
After the defense presented its three witnesses, defense counsel advised the trial court that he wanted to call Deputy Forte and had subpoenaed his attendance, but that Forte had not responded to the subpoena and defense counsel could not ascertain whether the subpoena had, in fact, been served. The trial court adjourned the trial for the day in order to give defense counsel time to ascertain the status of the subpoena. There is nothing in the record to indicate how the matter was resolved. Deputy Forte did not testify, however, when trial resumed the next morning.
The state then made a motion in limine pursuant to Crim.R. 16 (B) (4) to preclude the defense from commenting during closing arguments upon the fact that the state did not call Deputy Forte as a witness. The trial court granted the motion.
The jury returned a verdict of guilty on all six counts of the indictment. On August 5, 1998, the trial court sentenced appellant to twelve months of imprisonment each on counts one through four, two years on count five and six months on count six. The trial court ordered that all sentences were to be served consecutively, except for the sentence on count six, which was ordered to be served concurrent to the other five counts.[2]
The trial court did not state any reasons on the record for imposing consecutive sentences. In its journal entry imposing sentence, dated August 12, 1998, the trial court stated: "All sentences to run consecutive because of the serious nature of the offense and to not have them run consecutive would demean the seriousness of the offense."
Appellant timely appealed, assigning five assignments of error for our review.[3]
 I. APPELLANT'S CONVICTIONS OF ASSAULTING A PEACE OFFICER IN COUNTS TWO AND THREE WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND THUS, HE HAS BEEN DENIED DUE PROCESS OF LAW AS GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND OF OHIO.
In his first assignment of error, appellant contends that his convictions of assaulting a peace officer on counts two and three were against the manifest weight of the evidence. Specifically, appellant contends that although the evidence in this case supports reasonable inferences that appellant caused or attempted to cause physical harm to Deputies Hurd and Forte, the evidence does not establish that appellant harmed or attempted to harm Sergeant Prewitt and Deputy Wilcoxson, as charged in the second and third counts of the indictment. Therefore, appellant contends, his convictions on these counts should be reversed and remanded for a new trial.
When reviewing a claim that the judgment in a criminal case is against the manifest weight of the evidence, this court reviews the entire records, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing Statev. Martin (1983), 20 Ohio App.3d 172, 175.
R.C. 2903.13 (A) provides that "No person shall knowingly cause or attempt to cause physical harm to another * * *." A person acts knowingly when "he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22 (B)
Appellant contends that neither Prewitt nor Wilcoxson testified that they suffered any physical harm as a result of appellant's actions. Accordingly, appellant contends, in order to be convicted of violating R.C. 2903.13 with respect to Prewitt and Wilcoxson, the evidence adduced at trial had to establish beyond a reasonable doubt that appellant attempted to harm Prewitt and Wilcoxson.
According to appellant, when Prewitt and Wilcoxson arrived at the scene of his arrest, Deputies Hurd and Forte were holding him down on the ground, on his stomach, with one arm secured behind his back. Accordingly, appellant contends, it would have been physically impossible for him to either punch or kick Prewitt or Wilcoxson from this position. Moreover, appellant contends, even though he "was fiercely resisting the deputies' attempts to handcuff him," he was not doing so with any specific intent to harm Prewitt or Wilcoxson. Appellant's argument is without merit.
Both Prewitt and Wilcoxson testified that appellant attempted to harm them. Wilcoxson testified that when he arrived at the scene, he observed appellant, Hurd and Forte on the ground struggling. To assist, Wilcoxson ran up and tried to grab appellant's legs, but appellant kicked him "a couple of times." Although Wilcoxson did not testify that appellant's kicks caused him any injury, at a minimum, a jury could have concluded that appellant attempted to injure him by kicking him.
Likewise, Sergeant Prewitt testified that appellant punched at him, although appellant never delivered an actual blow to Prewitt because he was able to avoid being struck. Therefore, a jury could reasonably infer from this testimony that appellant attempted to cause physical harm to Prewitt.
Appellant contends that Wilcoxson's and Prewitt's testimony is "patently incredible," however, because his position on the ground when Prewitt and Wilcoxson arrived would have made it impossible for him to kick or punch anyone. We disagree.
First, although Deputies Hurd and Forte had appellant on the ground when Prewitt and Wilcoxson arrived on the scene, Wilcoxson testified that he observed appellant, Hurd and Forte struggling. There was no testimony that appellant's legs had already been secured by the time Wilcoxson and Prewitt arrived. Indeed, Wilcoxson testified that when he ran up and grabbed appellant's legs in order to assist the other deputies, appellant kicked him. We do not find this scenario patently incredible.
Moreover, the jury heard the testimony and was aware of appellant's position on the ground when Prewitt and Wilcoxson arrived on the scene. The weight to be given the evidence and the credibility of witnesses are primarily matters for the trier of fact. State v. DeHass (1976), 10 Ohio St.2d 230, paragraph one of the syllabus.
We have reviewed the entire record of proceedings before the trial court. Upon thorough consideration of the law and the evidence presented at trial, we find that there was substantial, competent, credible evidence upon which the jury could find appellant guilty of assault upon Sergeant Prewitt and Deputy Wilcoxson. When we weigh the evidence and all reasonable inferences from it, we conclude that the jury did not so clearly lose its way and create such a manifest miscarriage of justice that appellant's conviction on counts two and three must be reversed and a new trial ordered.
Appellant's first assignment of error is overruled.
 III. THE ASSAULT CONVICTIONS IN COUNTS TWO AND THREE ARE ALLIED OFFENSES OF THOSE IN COUNTS ONE AND FOUR AND THEREFORE MUST BE MERGED AND VACATED.
In his third assignment of error, appellant contends that the assaults committed against Sergeant Prewitt and Deputy Wilcoxson, as charged in counts two and three of the indictment, are allied offenses of similar import with the assaults committed against Deputies Hurd and Forte, as charged in counts one and four of the indictment. Therefore, appellant asserts, his conviction on counts two and three should be merged with his conviction on counts one and four and vacated.
The Ohio Supreme Court set forth the applicable test for determining whether crimes are allied offenses of similar import in State v. Rance (1999), 85 Ohio St.3d 632, 638-639: "Courts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other.' If the elements do so correspond, the defendant may not be convicted of both [crimes] unless the court finds that the defendant committed the crimes separately or with separate animus."
Appellant asserts that because the four assault charges are identical, they are allied offenses. Appellant contends further that the assaults on Prewitt and Wilcoxson were not committed with a separate animus and, therefore, he cannot be convicted of those offenses. Appellant recognizes that Prewitt and Wilcoxson were separate victims of his assault, but argues that once he had been pinned to the ground by Hurd and Forte, he acted with a single purpose and animus — to avoid being handcuffed — rather than an animus to harm Prewitt and Wilcoxson. We disagree.
Deputy Wilcoxson testified that when he ran up to assist Deputies Hurd and Forte, he grabbed appellant's legs to secure them. While he was trying to do so, appellant kicked him several times. We find appellant's actions indicative of a distinct and separate animus to harm Wilcoxson.
Sergeant Prewitt testified that appellant punched at him but never delivered an actual blow because he stood back and was able to avoid appellant's punches. We find appellant's actions in swinging at Prewitt, even though he was standing away from appellant, to be indicative of a separate animus to harm Prewitt.
Appellant's third assignment of error is therefore overruled.
 IV. THE TRIAL COURT COMMITTED PREJUDICIAL ERROR BY FORBIDDING THE DEFENSE FROM COMMENTING ON THE STATE' S FAILURE TO PRESENT THE TESTIMONY OF A MATERIAL WITNESS AND ALLEGED VICTIM.
In his fourth assignment of error, appellant challenges the trial court's decision granting the state's third motion in limine to preclude defense counsel from commenting in closing arguments upon the fact that the state did not call Deputy Forte as a witness.
Crim.R. 16 (B) (4) provides that "the fact that a witness' name is on a list furnished under subsections (B) (1) (b) and (f), and that such witness is not called shall not be commented upon at the trial." Accordingly, because Forte's name was on the state's witness list, the state contends that the trial court correctly granted its motion in limine to prohibit defense counsel from commenting upon Forte's absence.
Appellant concedes that the state listed Deputy Forte on its witness list, but contends that the prosecutor's statement at the onset of trial that the state did not intend to call Forte as a witness was tantamount to removing his name from the list. Therefore, appellant contends, Crim.R. 16 (B) (4) is not applicable and defense counsel should have been allowed to comment upon the fact that the state had not produced Forte at trial, even though he was an alleged victim of an assault and was also allegedly present when the cocaine, pager and money were found on appellant.
Assuming, arguendo, that the trial court erred in granting the state's motion, any error was harmless beyond a reasonable doubt. See Chapman v. California (1967), 386 U.S. 18; State v. Jenks
(1991), 61 Ohio St.3d 259, 283. Given the evidence presented by the state, it is apparent that there was no prejudice to appellant by defense counsel's inability to comment on the state's failure to call Deputy Forte for trial. Deputies Hurd and Wilcoxson both testified that they saw Forte grab for appellant but that appellant shook him off. Wilcoxson specifically testified that he saw appellant "elbow" Forte and Sergeant Prewitt testified that he saw appellant kicking and punching Forte. Wilcoxson testified that he was the deputy who searched appellant at the jail after appellant's arrest and found $270, a pager and 9.19 grams of crack cocaine on appellant's person. In light of this evidence regarding appellant's assault on Forte and Wilcoxson's discovery of the drugs and criminal tools on appellant's person, we find no reversible error in defense counsel's inability to comment on Forte's absence from trial.
Appellant's fourth assignment of error is therefore overruled.
 V. APPELLANT'S FIVE CONSECUTIVE SENTENCES WERE IMPOSED CONTRARY TO LAW AND ARE NOT SUPPORTED BY THE RECORD AND MUST THEREFORE BE VACATED AND ORDERED TO BE SERVED CONCURRENTLY.
In his fifth assignment of error, appellant challenges his consecutive sentences.
The controlling statute in determining whether to impose concurrent or consecutive sentences is R.C. 2929.14. R.C. 2929.14
(E) (4) provides in pertinent part:
 (E) (4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
Thus, pursuant to R.C. 2929.14 (E) (4), the trial court may impose consecutive prison terms for convictions of multiple offenses upon the making of certain findings enumerated in the statute. Moreover, under R.C. 2929.19 (B) (2) (c), if the trial court imposes consecutive sentences, it must make a finding on the record giving the reasons for imposing consecutive sentences. Here, the trial court did not make the necessary findings on the record to satisfy the criteria imposed by R.C. 2929.14 (E) (4). The journal Zentry of the trial court dated August 12, 1998 clearly does not comply with the statutory requirements of R.C.2929.14 (E) (4) for imposing consecutive sentences.
Moreover, we find that the trial court erred in imposing consecutive sentences. Pursuant to R.C. 2929.14 (E) (4). multiple prison terms are appropriate only if the trial court finds that: 1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; 2) the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and 3) the offender committed the multiple offenses while awaiting trial or sentence, or on probation or other post-release control for another offense; or the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses adequately reflects the seriousness of the defendant's conduct; or the offender has a history of recidivism and multiple terms are necessary to protect the public from future harm. Appellant does not meet these statutory conditions.
There is nothing in the record to indicate that consecutive sentences are necessary to protect the public or punish appellant. Moreover, the consecutive sentences imposed in this case are disproportionate to the seriousness of appellant's conduct and the danger he poses to the public. Only Deputy Hurd suffered any physical harm as a result of the incident and his testimony revealed that the harm was minimal, involving only kicked shins and some soreness in his shoulder. Deputy Forte did not testify, so there was no direct evidence that he suffered any physical harm, and none of the other deputies testified that Forte suffered any pain or discomfort as a result of appellant's assault. Wilcoxson testified that appellant kicked him, but did not testify that he suffered any physical harm as a result. Prewitt testified that appellant only attempted to hit him, but never succeeded. Thus, the assaults in this case were not so exceptional or severe that they warranted increased punishment. Appellant's drug conviction was similarly not so exceptional as to warrant increased punishment. Accordingly, appellant's sentences should have been ordered to be served concurrently.
Appellant's fifth assignment of error is well-taken. Appellant's sentences on counts one through six are hereby modified as follows: appellant is sentenced to twelve months of imprisonment each on counts one through four, two years on count five and six months on count six. All sentences are ordered to be served concurrently.
It is ordered that appellee and appellant equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
BLACKMON. J and KILBANE. J., CONCUR.
 _______________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE
[1] The parties stipulated to the chain of custody of the contraband and the laboratory report that established the weight and identity of the substance.
[2] At the sentencing hearing on August 5, 1998, the trial court also sentenced appellant to six months incarceration on Case CR 342239 as a probation violator and to twenty-four months incarceration on Case CR 363800 for attempted felonious assault with a firearm specification. These sentences were ordered to be served consecutive to the prison terms cited above.
[3] At oral argument, appellant conceded that State v. Rance
(1999), 85 Ohio St.3d 632, decided after appellant's brief was submitted, renders his second assignment of error moot. We agree and therefore do not consider appellant's second assignment of error.